**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> vs. <br> JAMES EDWARD COLQUHOUN, <br> Defendant. | Case No. 24-cr-29-CJW-1 <br><br> **REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS** |

_____

## I.   INTRODUCTION

On May 9, 2024, the Grand Jury returned an Indictment, charging Defendant with one count of Conspiracy to Distribute a Controlled Substance, in violation of 21 U.S.C. Sections 841(a)(1), 841(b)(1)(A), 846, and 851; one count of Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. Sections 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 851; one count of Carrying a Firearm During and in Relation to a Drug Trafficking Crime and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. Section 924(c)(1); and one count of Possession of a Firearm by a Felon, in violation of 18 U.S.C. Sections 922(g)(1) and 924(a)(8).[1]  (Doc. 22.)  The matter before me is Defendant James Edward Colquhoun's motion to suppress.  (Doc. 49.)  The motion was filed June 12, 2024, and included a list of items to be suppressed.  (*Id.*)  The Government timely filed a response on June 18, 2024.  (Doc. 59.)  The Honorable C.J. Williams, Chief United States District Court

---

[1] Defendant was initially charged by Criminal Complaint on April 16, 2024.  (Doc. 2.)

1

Judge, referred the motion to me for a Report and Recommendation. I held a hearing on Defendant's motion to suppress on July 18, 2024. (Doc. 60.)

The motion arises from law enforcement's stop and subsequent search of Defendant's car.

Defendant moves to suppress any evidence obtained from the allegedly unlawful search on February 13, 2024, including any statements which followed the entry into his vehicle and any evidence obtained from two cellphones discovered during the search. (Doc. 49.) Evidence he seeks to suppress includes: two cellphones, a firearm, a digital scale, packaged methamphetamine, two pills, an unknown substance, and $14,000 in U.S. currency seized from his vehicle during the traffic stop and any statement Defendant made following the search of his vehicle. (*Id.*)

At the hearing, Defendant did not offer any exhibits. The following Government's Exhibits were admitted without objection:

1. Officer Whiting Dash Camera video;
2. Officer Whiting Body Camera video; and
3. Officer Hagarty Body Camera video.

The Government called Cedar Rapids Police Officer Shawn Hagarty[2] and Marion Police Officer Austin Whiting.[3] I found both witnesses credible even if I find certain

---

[2] Officer Hagarty is currently assigned to the Cedar Rapids Police Department ("CRPD") K-9 Unit. Officer Hagarty and his dog were initially trained in North Carolina at the kennel where he obtained his dog in 2022. Since then, they have been trained and certified on a yearly basis through the National Tactical Police Dog Association. Prior to joining the K-9 Unit in 2022, and after graduating from the Iowa Law Enforcement Academy in 2018, Officer Hagarty was a general patrol officer for the CRPD.

[3] Officer Whiting has been employed by the Marion Police Department for approximately one year. He is an Iowa Law Enforcement Academy graduate. Prior to joining the Marion Police Department, he was a jail deputy with the Linn County Sheriff's Office.

facts that are not wholly consistent with their testimony. For the following reasons, I respectfully recommend that the District Court **deny** Defendant's Motion to Suppress.

## II. FINDINGS OF FACT

On February 13, 2024, Defendant was driving his vehicle in Cedar Rapids, Iowa. He had a passenger in his vehicle, Timber Hogan. The Cedar Rapids Police Department ("CRPD") Narcotics Unit was surveilling Defendant's vehicle. The CRPD had information that the passenger in Defendant's vehicle had an outstanding arrest warrant. Before the CRPD was able to stop the vehicle, Defendant drove into Marion, Iowa.

Marion Police stopped the vehicle. Marion Police Officer Green initiated the stop. Marion Police Officer Whiting and CRPD Officer Hagarty arrived immediately on the scene when Officer Green initiated the stop on Defendant's vehicle. Officer Green initiated the stop based on information provided to him and Officer Whiting by the CRPD that the passenger in the vehicle had an outstanding arrest warrant.

After the vehicle was stopped, Officer Hagarty said that he would speak to the Defendant, and asked Officers Whiting and Green to speak to the passenger and conduct the investigation into the arrest warrant. Officer Hagarty asked Defendant to exit the vehicle, but he was initially reluctant to do so. After Defendant exited the vehicle, Officer Hagarty conducted a free-air sniff around the car with his dog. The sniff started in front of the driver's side headlight and worked around the car counterclockwise. When they passed the driver's door seam, Officer Hagarty observed behavioral changes in his dog. The dog snapped his head back, took multiple deliberate breaths through his nose, began wagging his tail and then went into a sit, which is the dog's trained position for alerting/indicating to the presence of drugs in a vehicle. (Hagarty Hr'g Test. at 10-11; Gov. Ex. 3 at 7:21-7:36.) Officer Hagarty testified that while he was conducting his investigation and performing the free air dog sniff, Marion officers were addressing the outstanding arrest warrant for the passenger, Timber Hogan. (*Id.* at 13.)

3

Based on the dog's alert/indication, Officer Hagarty searched the vehicle. Prior to searching the vehicle, Officer Hagarty searched Defendant's person and found $11,380 in cash and a phone. Officer Hagarty then searched the vehicle and found methamphetamine, cocaine, and a firearm. (*Id.* at 11-12.)

Officer Whiting spoke with the passenger, Timber Hogan. Officer Whiting asked Hogan to identify herself. She was reluctant to do; however, eventually she provided Officer Whiting her name and date of birth. Officer Whiting testified that when officers are dealing with an individual with an outstanding arrest warrant, it is important to properly identifying the individual and confirm with "dispatch"[4] that the arrest warrant remains valid and active before placing the individual in custody. (Whiting Hr'g Test. at 23.) Officer Whiting testified that this confirmation process generally takes 10 to 15 minutes. (*Id.* at 23-24.) Specifically, Officer Whiting described the confirmation process as follows: (1) officers confirm the name and date of birth of the individual with the outstanding warrant; (2) officers then ask dispatch to confirm that the warrant for the individual is valid; (3) dispatch sends a message to the agency that issued the warrant to confirm that the warrant remains valid and is in hand; and (4) once dispatch confirms the validity of the warrant, dispatch relays that information to the officers. (*Id.* at 24.) When officers receive confirmation that an arrest warrant is valid, the officers take the individual into custody. (*Id.*)

---

[4] The term "dispatch," used interchangeably with "dispatcher," has crept into law enforcement lexicon and legal proceedings. While it may be common knowledge, it is worth mentioning in this context what the dispatcher does. Based on what I gleaned from the testimony, it appears that the dispatcher is remote from the scene of the encounter and in communication by radio with the officers. The dispatchers appear to have greater access to information and communications technology that allows them to ascertain, among other things, if active warrants exist. There was no evidence to suggest that it was improper for law enforcement to rely on dispatch to perform the warrant check. Similarly, there was no evidence to suggest that officers on the scene could have performed the warrant check, much less that they could have performed it more quickly.

Here, Officer Whiting spoke with Hogan, obtained her identifying information, and relayed that information to dispatch. Then he waited for dispatch to confirm the validity of the warrant. (*Id.* at 25.) While Officer Whiting was waiting for dispatch's confirmation, Officer Hagarty ran his dog around Defendant's vehicle. (*Id.* at 26-27.) After approximately 10 minutes, and well after Officer Hagarty had completed the free-air dog sniff and his dog had alerted/indicated on Defendant's vehicle, dispatch relayed to Officer Whiting confirmation of a valid warrant for Hogan's arrest. (Gov. Ex. 1 at 7:10-10:09.) After the warrant was confirmed, Officer Whiting took Hogan into custody. (*Id.* at 10:15-10:28.)

Defendant and Hogan appeared to be a couple. At one point they kissed in the vehicle and appeared to be distressed (particularly Hogan) about the prospect of them being separated and Hogan being arrested. There was no evidence to suggest that Defendant desired to or attempted to leave Hogan with law enforcement and continue on his way without her. Nor, for that matter, was there any testimony or argument about whether law enforcement considered him free to leave at any point after the traffic stop was initiated.

### III. DISCUSSION

#### A. Parties' Arguments

Defendant argues that the "vehicle seizure in this matter extended beyond the 'mission' of the seizure." (Doc. 49-1 at 3.) Specifically, Defendant argues that:

> In this case the cause of the stop was to arrest Ms. Hogan, who had an arrest warrant. This is a relatively short process. As soon as it was completed, the stop should have been completed and [Defendant] should have been allowed to go on his way. The officers indicated to [Defendant] that they were going to run the police dog around the vehicle while they confirmed that Ms. Hogan had an arrest warrant. This makes no sense. The police cannot have it both ways. They cannot claim that they have probable cause for the seizure because they wanted to execute an arrest of someone they knew to have an arrest warrant and then turn around and

5

> claim they needed to extend the stop to find out if the person they wanted to arrest had an arrest warrant. Once the arrest of Ms. Hogan was effectuated, that should have been the end of the seizure.

(*Id.* at 4.) Defendant also argues that any admissions he made regarding his involvement in the drug trade after the illegal search should be suppressed as fruit of the poisonous tree. (*Id.* at 6.) Similarly, Defendant asserts that the two cellphones found during the illegal search and "[a]ny subsequent searches of those phones would be clear fruit of the poisonous tree and thus should be suppressed as well." (*Id.* at 7.)

The Government argues that the dog sniff did not prolong the traffic stop "beyond the reasonable time required to complete the tasks tied to the warrant related to the arrest of Timber Hogan, defendant's girlfriend and passenger." (Doc. 59 at 5-6.) The Government points out that "[w]hile officers waited on dispatch to confirm the warrant, Officer Hagarty ran his K-9 partner around defendant's vehicle, and the K-9 partner indicated to the odor of a trained narcotic." (*Id.* at 9.) Thus, the Government concludes that "[s]ince the dog sniff in this case occurred before Hogan's arrest warrant was confirmed by dispatch, the officers did not unlawfully prolong the duration of the traffic stop in order to conduct the dog sniff." (*Id.*)

## B. Relevant Law

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A traffic stop constitutes a seizure for purposes of the Fourth Amendment and therefore must be supported by probable cause or reasonable suspicion." *United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014) (citing *United States v. Hollins*, 685 F.3d 703, 705-06 (8th Cir. 2012)). Reasonable suspicion is based on the totality of the circumstances and requires a "particularized and objective basis" for suspecting legal wrongdoing before a stop can be justified. *United States v. Patrick*, 776

6

F.3d 951, 954 (8th Cir. 2015) (quoting *United States v. Cortez,* 449 U.S. 411, 417 (1981)); *see also United States v. Brown*, 60 F.4th 1179, 1182 (8th Cir. 2023) ("In analyzing whether an officer had reasonable suspicion, [courts] look to the totality of the circumstances.") (Citing *Kansas v. Glover*, 140 S.Ct. 1183, 1191 (2020)). "In short, the government must point to specific, articulable facts that reasonably suggest a crime." *United States v. Bustos-Torres*, 396 F.3d 935, 942 (8th Cir. 2005) (citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

Warrantless searches are *per se* unreasonable, with a few well-established exceptions. *United States v. Kennedy*, 427 F.3d 1136, 1140 (8th Cir. 2005). However, courts have long recognized the "automobile exception" to the Fourth Amendment. *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003); *see generally Carroll v. United States*, 267 U.S. 132, 158-59 (1925). "The so-called 'automobile exception' permits police to conduct a warrantless search of an automobile if, at the time of the search, they have probable cause to believe that the vehicle contains contraband or other evidence of a crime." *Kennedy*, 427 F.3d at 1140-41 (citations omitted); *see also United States v. Castaneda*, 438 F.3d 891, 893 (8th Cir. 2006) ("The warrantless search of a vehicle is constitutional pursuant to the automobile exception to the warrant requirement, if law enforcement had probable cause to believe the vehicle contained contraband or other evidence before the search began.") (Quotation omitted)). The burden is on the Government to justify warrantless searches. *Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984).

In *Wells*, the Eighth Circuit Court of Appeals articulated probable cause for searching a vehicle during a lawful traffic stop:

> "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir.2000). . . . "If probable cause

7

Case 1:24-cr-00029-CJW-MAR   Document 61   Filed 08/21/24   Page 7 of 16

> justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). "[W]hen police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle, even after it has been impounded and is in police custody." *Michigan v. Thomas*, 458 U.S. 259, 261, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982) (per curiam).

347 F.3d at 287-88.

The constitutionally acceptable length of the seizure of the individual involved "is determined by the seizure's 'mission.'" *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (citing *Illinois v. Caballes,* 543 U.S. 405, 407 (2005)). Stops may last no longer than necessary to allow officers to achieve their stated purpose. *Id.* (citations omitted); *United States v. Jones*, 269 F.3d 919, 925 (8th Cir. 2001)). Whether an officer has reasonable suspicion to expand the scope of a stop is determined by looking at "the totality of the circumstances, in light of the officer's experience." *United States v. Carrate*, 122 F.3d 666, 668 (8th Cir. 1997) (citations and quotation marks omitted).

During a traffic stop, an officer may check a driver's license and registration, ask his or her destination and purpose, and ask him or her to step out of the vehicle. *United States v. Linkous,* 285 F.3d 716, 719 (8th Cir. 2002). Moreover, during a traffic stop, an officer "may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks," including a check of the driver's criminal history. *United States v. Quintero-Felix*, 714 F.3d 563, 567 (8th Cir. 2013) (citation omitted); *Jones*, 269 F.3d at 924-25 (listing several tasks officers can legally perform on a traffic stop). While a vehicle is stopped, officers may extend inquiries into matters unrelated to the traffic stop, as long as doing so does not "measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

8

The necessary length of a stop and necessary investigation will vary based on the circumstances of each case. An officer may detain a driver as long as reasonably necessary to conduct these investigative activities and to issue a warning or citation. *Jones,* 269 F.3d at 925 (citing *United States v. Wood,* 106 F.3d 942, 945 (10th Cir. 1997)). If, at any time during a reasonable traffic stop, an officer "develops a reasonable, articulable suspicion that a vehicle is carrying contraband," the officer may expand his intrusion into issues unrelated to any traffic offense. *United States v. Sanchez*, 417 F.3d 971, 975 (8th Cir. 2005) (quotations omitted). A dog sniff of the exterior of a vehicle during a lawful traffic stop does not violate the Fourth Amendment. *United States v. Rivera*, 570 F.3d 1009, 1012 (8th Cir. 2009) (citing *Illinois v. Caballes*, 543 U.S. 405, 409-10 (2005)); *see also United States v. Nguyen*, 59 F.4th 958, 964 (8th Cir. 2023) ("An open air dog sniff that does not prolong the initial purpose of a stop is permissible"); *United States v. Harry*, 930 F.3d 1000, 1005 (8th Cir. 2019) ("[A]s long as a traffic stop is not extended in order for officers to conduct a dog sniff, the dog sniff is lawful") (quoting *United States v. Fuehrer*, 844 F.3d 767, 773 (8th Cir. 2016)). However, a dog sniff cannot unreasonably prolong the stop absent "the necessary reasonable suspicion to justify a further detention or unless the continued encounter is consensual." *United States v. Munoz*, 590 F.3d 916, 921 (8th Cir. 2010) (citations omitted).

"[A]n alert or indication by a properly trained and reliable drug dog provides probable cause for the arrest and search of a person or for the search of a vehicle." *United States v. Winters*, 600 F.3d 963, 967 (8th Cir. 2010); *see also United States v. Holleman*, 743 F.3d 1152, 1157 (8th Cir. 2014) (providing that "the handling officer testified [his dog] gave two definitive 'alerts' to the side of [the defendant's] truck" and "[a]s a result, we are not concerned about [the dog's] failure to give a full indication"); *United States v. Sundby*, 186 F.3d 873, 876 (8th Cir. 1999) (holding that the positive indication of a reliable drug dog, alone, is enough to establish probable cause). A drug

9

dog is considered reliable when it has been "trained and certified to detect drugs and a detailed account of the dog's track record or education is unnecessary." *United States v. Olivera-Mendez*, 484 F.3d 505, 512 (8th Cir. 2007) (citation omitted).

## C. Analysis

Defendant does not contest the traffic stop itself. Rather, Defendant objects that the stop was unconstitutionally prolonged. For the following reasons, I recommend the Court conclude that the traffic stop was not unconstitutionally prolonged. This case is factually similar to *United States v. Claude X*, 648 F.3d 599 (8th Cir. 2011). In *Claude X*, law enforcement conducted a traffic stop of the vehicle driven by the defendant. 648 F.3d at 600. Law enforcement stopped the vehicle to arrest the defendant's passenger who had an outstanding arrest warrant. *Id*. A K-9 officer arrived 10-15 minutes after the stop and around the time law enforcement was confirming that the defendant's passenger had a valid warrant. *Id*. While officers were arresting the defendant's passenger and ordering the defendant out of the vehicle, the K-9 officer began a free-air sniff of the exterior of the car. *Id*. The dog alerted on the rear bumper of the vehicle. *Id*. When the dog alerted, the passenger's belongings remained in the car. *Id*. at 600-601. The Eighth Circuit determined that the initial stop and ultimate search of the vehicle were both lawful. *Id*. at 602. The Eighth Circuit noted that "because the initial stop and the ultimate search of the vehicle were both lawful, suppression would be appropriate only if the lawful stop became unlawful because it was prolonged beyond the time reasonably required to complete the arrest of [the passenger]." *Id*. (quotation omitted). The Eighth Circuit found that the stop was not unconstitutionally prolonged and explained that:

> The district court made a specific factual finding that when [the K-9 officer] directed [his dog] to search (sniff) the exterior of [the defendant's] vehicle, the officers had not concluded their routine procedures pertaining to the arrest of [the passenger]. Specifically, the district court found that [the

10

passenger's] possessions (including her purse) were still in [the defendant's] car, and the police had not finished processing [the passenger's] arrest. These findings are not clearly erroneous. As such, the lawful stop was not prolonged beyond the time reasonably required to complete the arrest of [the passenger].

*Id*. at 602-603 (quotations omitted).

Similarly, this case is analogous to *United States v. Fuehrer*, 844 F.3d 767 (8th Cir. 2016). In *Fuehrer*, the defendant's vehicle was stopped for speeding. 844 F.3d at 770. The traffic stop involved the following pertinent facts:

> During the traffic stop, [the defendant] was unable to provide a license. Deputy Williams asked [the defendant] to sit in the patrol car while he completed paperwork for the traffic violation. During this time, a second deputy, Deputy Kearney, arrived with a trained narcotics canine. Deputy Kearney conducted an open-air sniff of [the defendant's] vehicle and the canine alerted to the presence of narcotics. After the dog-sniff search was complete, Deputy Williams finished the tasks related to the traffic stop and wrote [the defendant] a warning for the traffic violation. Deputies Williams and Kearney then informed [the defendant] that the canine had alerted to the presence of narcotics, and Deputy Williams gave [the defendant] his *Miranda* warnings. Officers searched the vehicle and found 26.09 grams of methamphetamine.

*Id*. at 770-71. The defendant argued that he was "unconstitutionally detained while officers executed the dog sniff." *Id*. at 772. The Eighth Circuit determined that the dog sniff did not unconstitutionally prolong the traffic stop:

> In this case, Deputy Kearney arrived within two minutes of Deputy Williams initiating the traffic stop. Because [the defendant] did not have a license, Deputy Williams asked [the defendant] to sit in the patrol car while he completed paperwork. Deputy Kearney conducted the dog sniff while [the defendant] was in the patrol car. Deputy Williams completed the tasks related to the traffic stop and wrote [the defendant] a warning after the dog sniff was complete and the dog had alerted to the presence of narcotics.

11

> Thus, there is no evidence that the dog sniff unlawfully prolonged the traffic stop beyond what was necessary to complete the stop.

*Id*. at 773.

Here, Officer Hagarty, the canine handler who performed the dog sniff, was immediately on the scene when Defendant's vehicle was pulled over. Officer Hagarty testified that while he was conducting his investigation and performing the dog sniff, the Marion Police officers were addressing the outstanding arrest warrant for Timber Hogan, the passenger in Defendant's vehicle. (Hagarty Hr'g Test. at 13.) Officer Whiting testified regarding his investigation of Hogan's outstanding arrest warrant. Officer Whiting explained that he spoke with Hogan, obtained her identifying information, and relayed that information to dispatch. Then he waited for dispatch to confirm the validity of the warrant. (Whiting Hr'g Test. at 25.) Officer Whiting testified that while he was waiting for dispatch's confirmation, Officer Hagarty ran his dog around Defendant's vehicle. (*Id.* at 26-27.) After approximately 10 minutes, and after Officer Hagarty had completed the free-air dog sniff and his dog had alerted/indicated on Defendant's vehicle, dispatch relayed to Officer Whiting confirmation of a valid warrant for Hogan's arrest. Officer Whiting's dash camera video confirms this. Government Exhibit 1, Officer Whiting's dash camera video, shows at 7:08-8:03 that Officer Hagarty retrieved his dog from his patrol car, took his dog to Defendant's vehicle for the free-air sniff, rewarded his dog for the dog's alert/indication on the vehicle, and returned the dog to his patrol vehicle. Government Exhibit 1 also shows that at 9:57-10:07 dispatch confirmed to Officer Whiting that Hogan's arrest warrant was valid. Officer Whiting took Hogan into custody at 10:15 on Government Exhibit 1. It is clear from the testimony and Government Exhibit 1 that the dog sniff was completed before Officer Whiting completed executing the arrest warrant on Hogan.

I am unpersuaded by Defendant's argument that: "The police cannot have it both ways. They cannot claim that they have probable cause for the seizure because they wanted to execute an arrest of someone they knew to have an arrest warrant and then turn around and claim they needed to extend the stop to find out if the person they wanted to arrest had an arrest warrant." Officer Whiting testified that:

> So any time we go out with an individual that says that they have a warrant in our system, we confirm once we are out with that individual with our dispatch that that warrant is still valid and still active before placing them in custody. It's very rare that a warrant does get pulled for some reason, but in the case that it does get pulled, we don't want to put somebody in custody that doesn't have a warrant.

(Whiting Hr'g Test. at 23.) Officer Whiting also testified that it is the policy of the Marion Police Department to confirm an arrest warrant is valid and in hand before taking the individual into custody. I find this policy reasonable, and it makes sense for law enforcement to confirm a warrant before taking someone into custody, even if the arresting officer is informed of the existence of the arrest warrant from another law enforcement agency.

Thus, based on the foregoing, I find that neither Officer Whiting's confirmation of the validity of Hogan's arrest warrant nor Officer Hagarty's dog sniff unnecessarily prolonged the traffic stop. *See Quintero-Felix*, 714 F.3d at 567 (providing that during a traffic stop, an officer "may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks"); *Fuehrer*, 844 F.3d at 773. At the hearing, Defendant conceded there was no evidence that dispatch was "slow-playing" the warrant checking process to facilitate the dog sniff. Further, because the dog sniff did not prolong the stop and Officer Hagarty's dog alerted on Defendant's vehicle for narcotics, law enforcement had probable cause to search the vehicle. During the dog sniff, Officer Hagarty's dog alerted on Defendant's front driver's door; i.e., the dog sat.

(Gov. Ex. 3 at 7:32-7:34). The dog's alert/indication also gave Officer Hagarty probable cause to search the car. *See United States v. Rederick*, 65 F.4th 961, 967 (8th Cir. 2023) ("'[A]n alert or indication by a properly trained and reliable drug dog provides probable cause for the arrest and search of a person or for the search of a vehicle.' *United States v. Winters*, 600 F.3d 963, 967 (8th Cir. 2010).") (alteration in original); *United States v. Jackson*, 811 F.3d 1049, 1052 (8th Cir. 2016) ("The positive alert by a reliable drug dog alone establishe[s] probable cause."). Defendant does not dispute Officer Hagarty's and his dog's training and certification. Accordingly, I recommend that Defendant's motion to suppress be denied.

Alternatively, although I found the traffic stop and vehicle search constitutional, if the District Court were to disagree with me, Defendant's statements following the stop and any searches conducted on the phones found during the stop should be suppressed. Evidence obtained as a result of an unconstitutional search or seizure must be suppressed as well as any evidence later discovered to be an illegal "fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804 (1984) (citing *Wong Sun*, 371 U.S. at 484). "Any evidence secured through an unreasonable, hence illegal, search and seizure may not be used in a federal prosecution, nor may the fruit of such tainted evidence be admitted against the defendant whose privacy rights were originally violated." *United States v. Conner*, 948 F. Supp. 821, 829 (N.D. Iowa 1996) (citing *Weeks v. United States*, 232 U.S. 383 (1914); *Wong Sun*, 371 U.S. at 484-88). However, the evidence must be suppressed only if the "illegality is at least a but-for cause of obtaining the evidence." *United States v. Riesselman*, 646 F.3d 1072, 1079 (8th Cir. 2011) (quoting *United States v. Olivera-Mendez*, 484 F.3d 505, 511 (8th Cir. 2007)).

It appears that any statements that Defendant made after the stop or any search of the phones found during the stop would not have been made or searched "but-for" the traffic stop. The record on this issue is not well developed. Defendant's brief makes the

14

conclusory statements that "but-for" the illegal search Defendant would not have made any statements to law enforcement and his phones would not have been searched. Defendant's statements and cellphones were clearly identified as items to be suppressed in Defendant's motion. (Doc. 40 at 2.) The Government acknowledged the argument but made no substantive response. Neither party addressed these arguments at the hearing. Thus, the record is devoid of what, if anything, Defendant said to law enforcement following the traffic stop, when he said it, or where he said it. Similarly, the record is devoid of what, if anything, was found on the phones or even if they were searched. There is no record of whether, if the phones were searched, law enforcement obtained a search warrant to do so.

Here, where the Government has not challenged the conclusion that "but for" the search Defendant would not have made statements to law enforcement and his phones would not have been searched, there is at least a prima facie showing that all of the evidence was the direct product of the search or fruit of the poisonous tree. The Government has not attempted to show that any of the evidence was the product of some independent investigation that did not rely on the allegedly unconstitutionally prolonged search. Similarly, the Government has not attempted to show that the Defendant's statements were somehow attenuated and thereby not subject to suppression. Thus, if the Court rules the search was unconstitutional, I recommend the Court suppress all of the evidence listed in Defendant's motion.

### IV. CONCLUSION

For the reasons set forth above, I respectfully recommend the District Court **deny** Defendant's Motion to Suppress. **(Doc. 49.)**

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Crim. P. 59(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation. Objections must specify the

parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise,* 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 21st day of August, 2024.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa