# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-CR-29-CJW-MAR |
| Plaintiff, | **ORDER** |
| vs. | |
| JAMES EDWARD COLQUHOUN, | |
| Defendant. | |

## I.   INTRODUCTION

This matter is before the Court on defendant's motion to suppress evidence of a vehicle search. (Doc. 49). The government filed a timely resistance. (Doc. 59). Following a hearing on July 18, 2024, United States Magistrate Judge Mark A. Roberts recommended this Court deny defendant's motion. (Doc. 61). Defendant timely filed his objections to Judge Roberts' report and recommendation ("R&R") (Doc. 69) and the government filed its resistance to defendant's objection (Doc. 70).

For the following reasons, defendant's objections are **overruled**. (Doc. 69). The Court **adopts with modifications** Judge Roberts' R&R (Doc. 61) and **denies** defendant's motion to suppress (Doc. 49).

## II.   STANDARD OF REVIEW

The Court reviews Judge Roberts' R&R under the statutory standards found in Title 28, United States Code, Section 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

*See also* FED. R. CIV. P. 72(b) (stating identical requirements). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, the district court must review the objected portions de novo. 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate [judge]'s report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

### III. FACTUAL BACKGROUND[1]

On February 13, 2024, defendant was driving his vehicle in Cedar Rapids, Iowa with Timber Hogan ("Hogan") as a passenger. Upon entering Marion, Iowa, Marion Police initiated a stop based on information that Hogan had an outstanding arrest warrant. After the vehicle stopped, Officer Hagarty spoke to defendant while officers Whiting and Green approached Hogan to inquire about the arrest warrant. (Gov. Exhibit 1, at 00:54). Officer Hagarty requested that defendant exit the vehicle while Officer Hagarty's police dog conducted a free-air sniff of defendant's vehicle. (Gov. Exhibit 3, at 3:47).

---

[1] After reviewing the hearing transcript (Doc. 68) and the exhibits, the Court finds that Judge Roberts accurately and thoroughly set forth the relevant facts in the R&R. The Court thus adopts with minor modifications Judge Roberts' summary of the facts here. Judge Roberts' citations to hearing testimony have been adjusted to reflect citations in the official transcript (Doc. 68), and the Court has added additional citations where relevant. Otherwise, the Court notes its modifications where made. When relevant, the Court relies on and discusses additional facts in conjunction with its legal analysis.

During the open-air search, Officer Hagarty observed the dog's behavior change around the driver's door seam. The dog snapped his head back, took multiple deliberate breaths through his nose, began wagging his tail, and then sat down, which is the dog's trained position for alerting/indicating to the presence of drugs in a vehicle. (Hagarty Hr'g Test., at 11-12; Gov. Exhibit 3 at 7:21-7:36). This prompted Officer Hagarty to search the vehicle, during which Officer Hagarty discovered controlled substances, including cocaine and methamphetamine, and a firearm. (Hagarty Hr'g Test., at 13-14). Officer Hagarty also searched defendant's person and discovered $11,380 in cash and a phone. (*Id.*, at 13). Officer Hagarty testified that while he was conducting his investigation and performing the open-air dog sniff, Marion officers were addressing the outstanding arrest warrant for Hogan. (*Id.*, at 14-15). Officer Whiting spoke with Hogan, who, though initially reluctant, eventually provided Officer Whiting her name and date of birth. (Gov. Exhibit 1, at 1:50-2:53).

Officer Whiting further testified that when officers are dealing with an individual who may be subject to an outstanding arrest warrant, it is important to properly identify the individual and confirm with "dispatch" that the arrest warrant is valid and active before placing the individual in custody. (Whiting Hr'g Test., at 24-25). Officer Whiting testified this process generally takes 10 to 15 minutes, (*Id.,* at 25), and described the process as follows: (1) officers confirm the name and date of birth of the individual with the outstanding warrant; (2) officers then ask dispatch to confirm that the warrant for the individual is valid; (3) dispatch sends a message to the agency that issued the warrant to confirm that the warrant remains valid and is in hand; and (4) once dispatch confirms the validity of the warrant, dispatch relays this information to the officers who then take the individual into custody. (*Id.*, at 25-26).

Here, Officer Whiting spoke with Hogan, obtained her identifying information, and relayed that information to dispatch. (Gov. Exhibit 2, at 1:50-4:00). Then he waited

3

Case 1:24-cr-00029-CJW-MAR   Document 73   Filed 09/17/24   Page 3 of 11

for dispatch to confirm the validity of the warrant. (Whiting Hr'g Test., at 26-27; Gov. Exhibit 2, at 4:00-10:12). While waiting for dispatch's confirmation, Officer Hagarty conducted a search of defendant's vehicle. (*Id.*, at 28; Gov. Exhibit 1, at 6:50-8:00). After approximately 10 minutes, and well after Officer Hagarty completed the open-air dog sniff and his dog had alerted to defendant's vehicle, dispatch relayed to Officer Whiting confirmation of a valid warrant for Hogan's arrest. (Gov. Exhibit 1, at 7:10-10:09). After the warrant was confirmed, Officer Whiting took Hogan into custody. (*Id.*, at 10:15-10:28).

Defendant was charged with a number of offenses in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), 846, and 851; one count of Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 851; one count of Carrying a Firearm During and in Relation to a Drug Trafficking Crime and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1); and one count of Possession of a Firearm by a Felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(8). (Doc. 22).

### IV.     ANALYSIS

Defendant moved to suppress evidence arising from the stop and subsequent seizure of his vehicle. (Doc. 49). Defendant argues "the vehicle seizure in this matter extended beyond the 'mission' of the seizure," and thus violated his Fourth Amendment rights. (Doc. 49-1 at 3). The government argues that the dog sniff did not prolong the traffic stop "beyond the reasonable time required to complete the tasks tied to the warrant related to the arrest of Timber Hogan, defendant's girlfriend and passenger." (Doc. 59 at 5-6).

Judge Roberts recommended the Court deny defendant's motion to suppress. (Doc. 61, at 15-16). Specifically, Judge Roberts concluded that neither Officer Whiting's

4

confirmation of the validity of Hogan's arrest warrant nor Officer Hagarty's dog sniff unnecessarily prolonged the traffic stop. (*Id.*, at 13). Judge Roberts cited Officer Whiting's testimony that the Marion Police Department policy requires officers confirm an arrest warrant is valid and in hand before taking an individual into custody. (*Id.*). Judge Roberts further explained that the dog sniff occurred before Officer Whiting confirmed the warrant's validity and executed the arrest warrant on Hogan. (*Id.*, at 12).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A traffic stop constitutes a seizure for purposes of the Fourth Amendment and therefore must be supported by probable cause or reasonable suspicion." *United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014) (citing *United States v. Hollins*, 685 F.3d 703, 705-06 (8th Cir. 2012)). Because a traffic stop requires probable cause or reasonable suspicion, "the government must point to specific, articulable facts that reasonably suggest a crime." *United States v. Bustos-Torres*, 396 F.3d 935, 942 (8th Cir. 2005) (citing *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

Although warrantless searches are per se unreasonable, courts have long recognized the "automobile exception" to the Fourth Amendment. *United States v. Wells*, 347 F.3d 280, 287 (8th Cir. 2003). "The so-called 'automobile exception' permits police to conduct a warrantless search of an automobile if, at the time of the search, they have probable cause to believe that the vehicle contains contraband or other evidence of a crime." *United States v. Kennedy*, 427 F.3d 1136, 1140 (8th Cir. 2005). Accordingly, "[t]he warrantless search of a vehicle is constitutional pursuant to the 'automobile exception' to the warrant requirement, if law enforcement had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began." *United States v. Castaneda*, 438 F.3d 891, 893 (8th Cir. 2006).

The constitutionally acceptable length of the seizure of the individual involved "is determined by the seizure's 'mission.'" *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Whether an officer has reasonable suspicion to expand the scope of a stop is determined by considering "the totality of the circumstances, in light of the officer's experience." *United States v. Carrate*, 122 F.3d 666, 668 (8th Cir. 1997). But during a traffic stop, an officer "may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks," including a check of the driver's criminal history. *United States v. Quintero Felix*, 714 F.3d 563, 567 (8th Cir. 2013) (citation omitted); *United States v. Jones*, 269 F.3d 919, 925 (8th Cir. 2001) (listing several tasks officers can legally perform on a traffic stop). Further, "[t]he occupants of a vehicle may be detained while the officer completes a number of routine but somewhat time-consuming tasks related to the traffic violation, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning." *United States v. Riley*, 684 F.3d 758, 764 (8th Cir. 2012) (internal quotation and alteration omitted).

Accordingly, the necessary length of a stop will vary based on the circumstances of each case and an officer may detain a driver as long as is reasonably necessary to conduct investigative activities and to issue a warning or citation. *Jones*, 269 F.3d at 925 (citing *United States v. Wood*, 106 F.3d 942, 945 (10th Cir. 1997)). But "an officer may not extend a traffic stop longer than 'the time needed to handle the matter for which the stop was made' unless he has reasonable suspicion of criminal activity." *United States v. Pacheco*, 996 F.3d 508, 511 (8th Cir. 2021) (quoting *Rodriguez*, 575 U.S. at 350). However, a dog sniff of the vehicle's exterior during a lawful traffic stop does not violate the Fourth Amendment. *United States v. Rivera*, 570 F.3d 1009, 1012 (8th Cir. 2009) (citing *Caballes*, 543 U.S. at 409-10); *see also United States v. Nguyen*, 59 F.4th 958,

6

Case 1:24-cr-00029-CJW-MAR   Document 73   Filed 09/17/24   Page 6 of 11

964 (8th Cir. 2023) ("An open air dog sniff that does not prolong the initial purpose of a stop is permissible."). Indeed, "[a]n alert or indication by a properly trained and reliable drug dog provides probable cause for the arrest and search of a person or for the search of a vehicle." *United States v. Winters*, 600 F.3d 963, 967 (8th Cir. 2016).

Defendant objects to Judge Roberts' recommendation to deny his motion to suppress and asserts that the evidence before the Court indicates that the stop was unconstitutionally prolonged beyond the time necessary to confirm the existence of Hogan's arrest warrant. (Doc. 69, at 2-6). Defendant argues that because "the mission of the stop ended when the object of the stop (Ms. Hogan, who had a warrant) was no longer in the vehicle," the subsequent seizure and search of the vehicle was unconstitutionally prolonged. (Doc. 69, at 4). Defendant asserts that because the stop was conducted due to Hogan's outstanding warrant, defendant should have been allowed to leave after this was completed. (*Id.*, at 4). Defendant further argues that any admissions made regarding his involvement in the drug trade after the illegal search should be suppressed as fruit of the poisonous tree. (*Id.*, at 6). Specifically, defendant asserts that the two cellphones found during the illegal search and "[a]ny subsequent searches of those phones would be clear fruit of the poisonous tree" and thus should likewise be excluded. (*Id.*).

For the following reasons, the court overrules these objections. The Court addresses each objection in turn.

### A. *The Seizure did not Impermissibly Exceed the Stop's Mission and was not Impermissibly Prolonged*

The Court agrees with Judge Roberts' conclusion that neither Officer Whiting's confirmation of the validity of Hogan's arrest warrant nor Officer Hagarty's dog sniff unconstitutionally prolonged the traffic stop.

7

Law enforcement stopped defendant's vehicle to address and potentially arrest Hogan, who they reasonably believed was subject to an outstanding arrest warrant. The Eighth Circuit has explained that a lawful stop is not prolonged when an open-air search occurs before the officers conclude their routine procedures relating to the arrest of a passenger. *United States v. Claude X*, 648 F.3d 599, 602-03 (8th Cir. 2011). Here, as Judge Roberts notes, the dog sniff of defendant's vehicle was completed before Officer Whiting confirmed and executed Hogan's arrest warrant. Based on the record, the Court specifically finds that Hogan provided her full name to Officer Whiting. (Gov. Exhibit 2 at 2:41-2:57). Officer Whiting immediately radioed the information to dispatch and requested confirmation the warrant was still valid. (Gov. Exhibit 1, at 3:10-3:40; Gov. Exhibit 2, at 3:10-3:40). Dispatch responded that it had not confirmed the warrant but would do so. (*Id.*). Approximately 7 minutes later, dispatch confirmed the warrant was still valid and Officer Whiting immediately placed Hogan in handcuffs. (Gov. Exhibit 1, at 10:00). Both dashcam and bodycam video clearly show Officer Hagarty performing the dog sniff and placing his dog back in his vehicle before dispatch confirms the warrant. (Gov. Exhibit 1, at 7:00-8:05; Gov. Exhibit 2, at 7:00-7:55).

Defendant objects to any reliance on *Claude X* under these facts because, he argues that unlike in *Claude X*, "there is nothing tying the vehicle to Ms. Hogan" and "[a]s a result, the seizure of the vehicle exceeded the mission of the stop." (Doc. 69, at 5). In *Claude X*, the Court noted that the passenger's "possessions (including her purse) were still in [X]'s car, and the police had not finished processing [the passenger's] arrest." 648 F.3d at 603. Defendant argues that the purse tied the passenger to the car which enabled the vehicle to stay seized, whereas here nothing tied Hogan (the reason for the stop) to the car after she exited it. The Court disagrees. After Hogan exited the car, she continued to initiate conversation with defendant, who remained in the vehicle. Hogan repeatedly called for defendant's assistance and support while the police worked on

confirming her warrant. Although defendant is not a personal effect like the purse in *Claude X*, Hogan maintained a clear connection to the vehicle and defendant throughout the entire time the officers were confirming her warrant.

Defendant also fails to recognize that during traffic stops an officer "may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks," including a check of the driver's criminal history. *United States v. Quintero-Felix*, 714 F.3d 563, 567 (8th Cir. 2013). Judge Roberts also notes that "[w]hile officers waited on dispatch to confirm the warrant, Officer Hagarty ran his K-9 partner around defendant's vehicle." (Whiting Hr'g Test. at 26-27.) And it is well established that "[a]n open air dog sniff that does not prolong the initial purpose of a stop is permissible." *United States v. Nguyen*, 59 F.4th 958, 964 (8th Cir. 2023).

Even if the Court agreed with defendant's assertion that Hogan did not remain "[tied] to the vehicle," defendant erroneously ignores the Supreme Court's command that "[a]n officer's inquiries into matters unrelated to the justification for the traffic stop do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). Here, after the vehicle was stopped, Officer Hagarty spoke with defendant. (Gov. Exhibit 2, at 0:45). Officer Hagarty asked about defendant's basic identifying information and driver's license. (*Id.*, at 1:00). Officer Hagarty's conversation with defendant then focused on correctly identifying Hogan, asking if there was anything illegal in the vehicle, and explaining the process for an open-air search. (*Id.*, 1:17-4:30). Officer Hagarty's questions to defendant were related to the justification for the traffic stop, and even if unrelated, they did not "convert the encounter into something other than a lawful seizure." *See Arizona*, 555 U.S. at 333. As such, the fact that defendant's charges arise from "matters unrelated to the justification for the traffic stop," is inapposite to the seizure's permissibility.

9

Case 1:24-cr-00029-CJW-MAR   Document 73   Filed 09/17/24   Page 9 of 11

Furthermore, as Judge Roberts also points out, it was department practice to confirm the validity of an outstanding warrant prior to finalizing an arrest, and during this time "the officer completes a number of routine but somewhat time-consuming tasks." *Quintero Felix*, 714 F.3d at 567. As such, defendant's argument that the officers knew Hogan's identity and should have confirmed her warrant before pulling her over holds little weight. Indeed, Officer Whiting testified that it is the policy of the Marion Police Department to confirm an arrest warrant is valid and in hand before taking the individual into custody. (Whiting Hr'g Test., at 25-26). To confirm the arrest warrant, the officers must also confirm the identity of the vehicle's occupant. It is reasonable that the officers would wait to confirm the arrest warrant until after they have confirmed the identity of the vehicle's occupant. In this instance, Officer Whiting further testified that while Officer Hagarty was conducting his investigation and performing the dog sniff, the Marion Police Officers were addressing the outstanding arrest warrant for Hogan. (Whiting Hr'g Test., at 28). And "as long as a traffic stop is not extended in order for officers to conduct a dog sniff, the dog sniff is lawful." *United States v. Fuehrer*, 844 F.3d 767, 773 (8th Cir. 2016). This testimony strongly supports Judge Roberts' conclusion that the dog sniff was completed before Officer Whiting completed executing the arrest warrant on Hogan and therefore did not constitute any unconstitutional prolonging of the stop.

The Court accordingly agrees with Judge Roberts' determination that neither Officer Whiting's confirmation of the validity of Hogan's arrest warrant nor Officer Hagarty's dog sniff unlawfully prolonged the traffic stop. *See Quintero Felix*, 714 F.3d at 567 (providing that during a traffic stop, an officer "may detain the offending motorist while the officer completes a number of routine but somewhat time-consuming tasks"). Moreover, because the dog sniff did not prolong the stop and Officer Hagarty's dog

alerted on defendant's vehicle for narcotics, law enforcement had probable cause to search the vehicle.

### B. The Evidence is not Fruit of the Poisonous Tree

The Court agrees with Judge Roberts' determination that the traffic stop and subsequent search were constitutional, and thus it need not determine whether all the evidence is fruit of the poisonous tree.

### V. CONCLUSION

For the reasons stated above, defendant's objections are overruled. (Doc. 69). The Court **adopts with modifications** Judge Roberts' Report and Recommendation (Doc. 61) and **denies** defendant's Motion to Suppress (Doc. 49).

**IT IS SO ORDERED** this 17th day of September, 2024.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa